IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jesus Estevez,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>A. Hedgpeth; et. al.,<br><br>　　　　Defendants. | No. CV-07-1553-ROS (PC)<br><br>**ORDER** |

Pending before the Court is Defendants' motion for summary judgment (Doc. 79) and three requests for judicial notice (Docs. "79-10", 86 and 99).[1]  For the reasons below, the motion for summary judgment will be granted and the requests for judicial notice will be granted in part and denied in part.

## BACKGROUND

Plaintiff alleges Defendants were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment of the United States Constitution.  Plaintiff alleges from April 18, 2006 to February 2008 Defendants denied, delayed or otherwise interfered with Plaintiff's ability to receive back surgery despite recommendations for surgery by specialists. (Doc. 31) (Second Amended Complaint).

---

[1] Doc. 79 is the Motion for Summary Judgment, and Attachment 10 to Doc. 79 is the request for judicial notice.  Therefore, the Court refers to the request for judicial notice as Doc. "79-10."

**A.   Pending Motions**

Defendants filed a motion for summary judgment, memorandum in support of the motion, and a separate statement of facts supported by exhibits. (Doc. 79). Plaintiff filed a notice of opposition to the motion for summary judgment, a declaration, a memorandum, a statement of disputed material fact contesting Defendants' statement of facts, (Docs. 80-85). Defendants filed a reply. (Doc. 87). Plaintiff also filed two documents titled "replies" which are actually sur-replies to the motion for summary judgment and statement of facts. (Docs. 90, 91). In addition, the parties filed three requests for judicial notice. (Docs. "79-10" and 86, 99).

**B.   Factual Background**

The following facts are undisputed unless otherwise stated.

**1.   Parties**

During the relevant time period, Plaintiff was incarcerated at Kern Valley State Prison ("KVSP"). Defendant A. Hedgpeth ("Hedgpeth") was the Warden at KVSP from 2007 to 2008.[2] Defendant Dr. Lopez is a licensed physician in the State of California who has worked at KVSP since 2006. Dr. Lopez became the Chief Medical Officer at KVSP in March 2007, and the Chief Medical Executive at KVSP on February 1, 2011. Defendant Dr. Spaeth is a licenced physician and surgeon in the State of California, and has worked at KVSP since September 2005. Dr. Spaeth's responsibilities include medical treatment of inmates. Dr. Spaeth treated Plaintiff, and was Plaintiff's principal health care provider from April 2006 to May 4, 2007. (Doc. 79-2, ¶ 1-11)

**2.   Medical Treatment**

Plaintiff arrived at KVSP on March 8, 2006. (Id., ¶ 26). Plaintiff's medical records show he was diagnosed with degenerative disc disease prior to arriving at KVSP. (Id., ¶ 25).[3]

---

[2]   Hedgpeth is currently Warden of Salinas Valley State Prison.

[3]   Defendant "disputes" this fact by stating he also had other back conditions. (Doc. 84). This "dispute" is not a dispute of Defendant's statement of facts, but provides additional

- 2 -

1  On April 18, 2006, Dr. Spaeth treated Plaintiff. (Id., ¶ 27). Defendants allege Dr. Spaeth
2  provided Plaintiff with a soft back brace and cane. (Id.). Plaintiff disputes this by stating
3  another doctor at another prison ordered the back brace and cane. (Doc. 84, at 2).
4  Defendants allege a request was submitted for Plaintiff to see a neurosurgeon, Dr. Rashidi,
5  for discetomy and laminectomy surgery. (79-2, ¶ 28). Plaintiff "disputes" this on the basis
6  that the request was "first" made by another doctor at another prison. (Doc. 84, at 2).
7  Plaintiff, however, does not dispute Dr. Spaeth made this request. (Id.). Moreover, Plaintiff
8  does not dispute that he had an MRI and neurosurgery consultation with Dr. Rashidi on April
9  25, 2006. (Doc. 79-2, ¶ 29).

10  During the consultation, Plaintiff indicated he wanted to undergo surgery. (Doc. 79-2,
11  ¶ 30). Dr. Rashidi recommended, "If after I review the MRI of the lumbar spine, and he
12  needs the surgery, [I] will proceed with right L5-S1 discetomy." (Id., ¶ 31). Plaintiff
13  alleges Dr. Rashidi recommended surgery at that time. (Doc. 84, at 2). Plaintiff, however,
14  relies on Dr. Rashidi's report, which is quoted above. There is no basis for Plaintiff's
15  position in the report. Therefore, Plaintiff's evidence does not create a genuine issue of
16  material fact.

17  On May 1, 2006, Dr. Spaeth submitted a request for Plaintiff to have a discetomy
18  performed by Dr. Rashidi. (Doc. 79-2, ¶ 33). On May 11, 2006, the request for surgery was
19  approved. (Id., ¶ 33). Plaintiff disputes that the request for surgery was approved, and states
20  "[i]t was only a request for service." (Doc. 84, at 3). Plaintiff cites Defendants' statement
21  of fact Number 81, but that statement of fact provides no clarification and as such does not
22  support Plaintiff's position. (Id.). Plaintiff also cites Exhibit 4 to his deposition, but that is
23  a "Physician Request for Services" which shows Dr. Spaeth requested the discetomy. (Id.;
24  Doc. 85, Ex. 4). Again, Plaintiff's evidence does not create a genuine issue of material fact.

25  On May 2, 2006, Dr. Spaeth prescribed Plaintiff hydrocodone/acetaminophen, a pain
26  reliever. (Doc. 79-2, ¶ 35). On May 17, 2006, Dr. Spaeth treated Plaintiff, and prescribed

27  _____
28  information.

- 3 -

1   Vicodin for back pain. (Id., ¶ 37-38). On June 15, 2006, Plaintiff's
2   hydrocodone/acetaminophen prescription was renewed. (Id., ¶ 40). On July 12, 2006, x-rays
3   of Plaintiff's lower spine were ordered and Plaintiff was prescribed Tylenol #3. (Id., ¶ 41-
4   42).

5   On August 29, 2006, Plaintiff had a neurosurgery consultation with Dr. Rahimifar.
6   (Id., ¶ 43). Plaintiff reported symptoms on the rights side of his body at his prior consultation
7   with Dr. Rashidi, but reported all symptoms were on his left side in his consultation with Dr.
8   Rahimifar. (Id., ¶ 44-45).[4] Due to the discrepancy, Dr. Rahimifar concluded surgery should
9   not be performed, and recommended a repeat MRI of the spine, neurology evaluation and
10  EMG nerve conduction study ("EMG-NCS"). (Id., ¶ 47-48).

11  On September 29, 2006, Dr. Spaeth prescribed Naproxen (anti-inflammatory),
12  Neurontin (for nerve pain), and Baclofen (muscle relaxer), and ordered Plaintiff to see a
13  doctor again in 30 days. (Id., ¶ 49). Plaintiff continued to see physicians and obtain
14  prescriptions for pain relievers. (Id., ¶ 50-52).

15  Defendants allege on December 12, 2006, Plaintiff discussed treatment options with
16  a physician, stated he was taking medication with good results, and wanted to try pain
17  management with epidural injections before considering back surgery. (Id., ¶ 55).
18  Defendants rely on Plaintiff's medical records kept in the ordinary course of business,
19  including the Outpatient Interdisciplinary Progress Notes. (79-8, MED 19) (Spaeth
20  declaration, Exhibit A, attached to Doc. 79-2). Plaintiff denies these allegations, citing

21

22  [4] Plaintiff disputes this allegation insofar as Plaintiff "never told . . . Doctor
    Rahimifar or Doctor Rashidi that [he] only had right leg pain. The [referral] stated right side
23  sciatica." (Doc. 84, at 4). Plaintiff does not explain how this contradicts Defendants' alleged
    fact. In any event, the consultation report from Dr. Rahimifar states, "This is a patient that
24  has generated a bit of confusion. . . . He is anxious to schedule a microdiskectomy, but when
    I compared all of the notes there is a discrepancy. . . . [N]o surgery should be done. . . .
25  [T]here is plenty of time to investigate him before any surgery can be done." (Doc. 85, Ex.
26  5). The discrepancy was that Plaintiff complained of symptoms on his right side, then
    "totally denie[d] all of that" and "claims that he has never had right-sided leg pain. His pain
27  is purely on the left side, which does not correspond to the MRI finding of October 2005, and
28  all the history, as documented on the previous medical record." (Id.).

- 4 -

generally to his declaration, and to Exhibit 3 attached to his declaration. (Doc. 84, at 5). Exhibit 3 is the Dr. Rashidi report from April 25, 2006, which states Plaintiff would like to proceed to surgery. (Doc. 85, Ex. 3). This does not contradict the subsequent December 12, 2006 medical report that Plaintiff discussed options, was having good results with medication, and wanted to try pain management. Plaintiff has provided no other basis to contest the December 12, 2006 medical report. As such, there is no genuine issue of material fact.

Subsequently, Dr. Spaeth ordered follow-up appointments with Dr. Kazi, at the Pain Management Institute, refilled Plaintiffs prescriptions, ordered Plaintiff to receive an epidural injection and to continue seeing a doctor. (Doc. 79-2, ¶ 56-60, 69-70). On January 25, 2007, Dr. Spaeth submitted a request for an EMG-NCS, which was conducted on February 14, 2007. (Id., ¶ 61, 71).

On February 15, 2007, Plaintiff was sent for surgery with Dr. Rashidi. (Id., ¶ 72). However, Dr. Rashidi postponed, and ultimately cancelled, the surgery due to pre-surgical test results. (Id., 73-79). Plaintiff alleges the surgery was cancelled "because tests had to be done because of the long delays." (Doc. 84, at 6).

On March 16, 2007, a prison doctor, Dr. Vasquez, submitted a request for Plaintiff to be seen by a neurosurgeon. (Doc. 79-2, ¶ 81). Plaintiff continued to receive prescriptions, epidural injections and another EMG-NCS. (Id., ¶ 83-85). The neurologist concluded based on the EMG-NCS that there was possible chronic radioculopathy, no evidence of myopathy, and the NCS of Plaintiff's bilateral lower extremities were normal, meaning no surgery was required. (Id., ¶ 86-87). Plaintiff reported his pain was a "4/10" and that he would be "ok." (Id., ¶ 88).[5]

Plaintiff continued to receive prescription medications, and Dr. Spaeth prescribed physical therapy. (Id., ¶ 89). On July 23, 2007, Plaintiff was seen by a prison doctor, Dr.

---

[5] Again, Plaintiff disputes this fact without any evidence or argument contesting the medical records. (Doc. 84, at 7).

- 5 -

Qamar, who submitted an urgent request for Plaintiff to see a neurosurgeon. (Id., ¶ 91). On August 17, 2007, Dr. Qamar ordered a follow-up. (Id., ¶ 92). On August 31, 2007, Dr. Lopez approved transportation for Plaintiff to his outside consultation with Dr. Rashidi, which was scheduled for October 9, 2007. (Id., ¶ 93).[6] At that consultation, an MRI was performed and Dr. Rashidi recommended Plaintiff proceed with surgery because conservative treatment had failed. (Id., ¶ 94-95). Dr. Rashidi recommended Plaintiff undergo a laminectomy, discectomy and fusion. (Id., ¶ 96).

On October 19, 2007, Dr. Qamar submitted a physician request for these procedures. (Id., ¶ 97). On February 21, 2008, Dr. Rashidi performed surgery on Plaintiff. (Id., ¶ 98). Between October 2007 and February 21, 2008, Plaintiff was prescribed pain medication and anti-inflammatory medication. (Id., ¶ 99).

**3.    Grievance**

There is an inmate grievance procedure at KVSP. (Id., ¶ 100). On December 11, 2006, Plaintiff submitted an inmate appeal (Log # 00320) alleging there were long delays in following doctor and specialist's orders. (Id., ¶ 101). At the first level review, Plaintiff requested a follow-up appointment with a doctor. (Id., ¶ 103). At the second level review, Dr. Spaeth informed Plaintiff he was being seen by a neurosurgeon, results were pending from recent tests, and once the neurosurgeon's report was completed, his primary care physician would determine what further treatment was needed. (Id., ¶ 105-107).[7] Dr. Lopez reviewed Plaintiff's appeal, the first level response and pertinent portions of Plaintiff's medical file. (Id., ¶ 109). Dr. Lopez partially granted Plaintiff's appeal because he was being seen by a neurosurgeon, but Dr. Lopez denied the appeal insofar as it requested "to

---

[6] Defendants allege Dr. Spaeth and Dr. Lopez approve or refer inmates for surgery with an outside provider, but do not schedule such appointments. (Id., ¶ 119-120). The prison's specialty clinic acquires contracts and schedules appointments with outside providers. (Id., ¶ 120).

[7] The Court does not rely on the portion of Doc. 79-2 ¶ 106 to which Plaintiff objects. (Doc. 84, at 9).

receive medication without difficulties" because pain medication required examination by a physician before it could be prescribed. (Id., ¶ 111-112).

### 4. Hedgpeth

Hedgpeth is not a medical provider and does not have medical training. (Id., ¶ 123). Defendants allege Hedgpeth did not become aware of Plaintiff's allegations that KVSP medical staff delayed or cancelled his surgery until Plaintiff filed a writ of habeas corpus in state court. (Id., ¶ 125). Plaintiff disputes this allegation, and states Hedgpeth was made aware of Plaintiff's allegations through his inmate appeal and inmate request for interview. (Doc. 84, at 11-12). It is unclear whether the inmate appeal and request for interview predated the writ of habeas corpus in state court, but Plaintiff relies on Exhibit 20, which is a December 17, 2007 inmate appeal. (Id.; Doc. 85, Ex. 20). The writ of habeas corpus was filed in state court sometime between October 26, 2007 and January 14, 2008. (Doc. 79-2, ¶ 126; Doc. 84, at 12; Doc. 85, Ex. 21).

When Hedgpeth learned of the writ, he inquired into Plaintiff's medical treatment. (Doc. 79-2, ¶ 127). Hedgpeth learned Plaintiff was being treated by a neurosurgeon, and surgery was recommended on October 9, 2007. (Doc. 79-2, ¶ 128). Surgery was performed approximately one month later. (Id., ¶ 98, 130).

## ANALYSIS

### A. Legal Standard

#### 1. Summary Judgment

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c). To enter summary judgment, the Court must examine all evidence and find no dispute concerning genuine issues of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-56 (1986). The evidence of the non-moving party is to be believed, and all reasonable inferences drawn in its favor. *Id.* To establish a genuine issue of material fact, an opposing party may not rely on simple denials, but is required to tender evidence of specific facts in

1  support of his contention that a dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal citations omitted). However, if the non-moving party bears the burden of proof at trial, the moving party's summary judgment motion need only highlight the absence of evidence supporting the non-moving party's claims. *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (citing *Celotex Corp.*, 477 U.S. at 323-25). The burden then shifts to the non-moving party who must produce evidence sustaining a genuine issue of disputed material fact. *Id.*

### 2. Deliberate Indifference

The Eighth Amendment prohibition against cruel and unusual punishment encompasses deliberate indifference to the serious medical needs of inmates. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To determine whether there has been deliberate indifference, courts examine two elements: (1) the seriousness of the prisoner's medical needs; and (2) the nature of the defendant's response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) *overruled on other grounds by WMX Tech., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

Generally, a serious medical need exists if the failure to treat a condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* Where the prisoner alleges a delay of surgery, it is not necessary to find the defendants' activities resulted in "substantial" harm. *McGuckin*, 974 F.2d at 1060. "[T]he fact that an individual sat idly by as another human being was seriously injured despite the defendant's ability to prevent the injury is a strong indicium of callousness and deliberate indifference to the prisoner's suffering." *Id.*

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). A prison official is deliberately indifferent if he or she knows the prisoner faces a substantial risk of harm and "disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). The prison official must act with a "sufficiently culpable state of mind." *Id.* at 834. A defendant must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id.* at 837. "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002) (citation omitted). This "subjective approach" focuses only "on what a defendant's mental attitude actually was." *Farmer*, 511 U.S. at 839. "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *McGuckin*, 974 F.2d at 1059 (alteration and citation omitted); *see also Toguchi*, 391 F.3d at 1060.

**B.     Summary Judgment Will Be Granted**

    **1.     Deliberate Indifference**

Plaintiff alleges Defendants were deliberately indifferent to his medical needs. However, as set forth above, Defendants were consistently responsive to Plaintiff's medical needs. In particular, Dr. Spaeth consistently treated Plaintiff and referred him to neurosurgeons for his back pain.

Plaintiff arrived at KVSP having already been diagnosed with degenerative disc disease. Following his initial treatment with Dr. Spaeth on April 18, 2006, Plaintiff had an MRI and neurosurgery consultation with a specialist *within one week*. By May 2, 2006, Dr. Spaeth prescribed Plaintiff pain medication and completed a request for Plaintiff to have a discectomy performed by Dr. Rashidi. Plaintiff was subsequently referred to three different neurosurgeons who determined no surgery was necessary. Dr. Spaeth continued to prescribe medication, follow-up doctor visits and physical therapy.

1 Ultimately, in July 2007, Plaintiff met with another prison doctor, Dr. Qamar, who
2 submitted an urgent request for Plaintiff to see a neurosurgeon. Dr. Lopez approved the
3 recommendation. This time, the neurosurgeon determined surgery was appropriate and
4 completed the surgery.

5 On this record, the Court finds there is no genuine issue of material fact as to
6 deliberate indifference. Dr. Spaeth consistently treated Plaintiff, referred Plaintiff to
7 neurosurgeons, and followed the neurosurgeon's recommendations for additional testing,
8 such as EMG-NCS. During this time, Plaintiff indicated he wanted to proceed to surgery,
9 then months later indicated he wanted to keep pursuing nonsurgical treatment. Plaintiff has
10 not set forth any evidence that Dr. Spaeth, Dr. Lopez or Hedgpeth knew of a medical need
11 or risk and consciously disregarded such risk. *Farmer*, 511 U.S. at 834-47 (a defendant must
12 not only "be aware of facts from which the inference could be drawn that a substantial risk
13 of serious harm exists," but "must also draw the inference"); *Gibson*, 290 F.3d at 1188 ("If
14 a [prison official] should have been aware of the risk, but was not, then the [official] has not
15 violated the Eighth Amendment, no matter how severe the risk."); *McGuckin*, 974 F.2d at
16 1059 ("Mere negligence in diagnosing or treating a medical condition, without more, does
17 not violate a prisoner's Eighth Amendment rights.").

18 Whether these "responses were medically reasonable given [Plaintiff's] medical
19 condition and background is a question we do not reach." *Toguchi*, 391 F.3d at 1061
20 Summary judgment is appropriate "[b]ecause no genuine issue of fact was raised regarding
21 [Defendants'] subjective knowledge and conscious disregard of a substantial risk of serious
22 injury to [Plaintiff]." *Id.* (affirming summary judgment in favor of defendant where doctor
23 "was consistently responsive to [patient's] medical needs").

24 Plaintiff's opposition to Defendants' statement of facts fails to present evidence
25 creating a genuine issue of material fact. Contrary to Plaintiff's argument that "the facts

alleged by Plaintiff are evidence,"[8] a party opposing summary judgment "is required to tender evidence of specific facts in support of his contention that a dispute exists." *Matsushita*, 475 U.S. at 585-86. Plaintiff has failed to tender such evidence.

### 2. Qualified Immunity

Alternatively, Defendants seek summary judgment for Hedgpeth and Dr. Lopez on the basis of qualified immunity.[9] Qualified immunity shields government officials from personal liability for civil damages where their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known. *Pearson v. Callahan*, 129 S.Ct. 808, 815-16 (2009). The qualified immunity inquiry consists of two parts: (1) "whether the facts that a plaintiff has . . . shown . . . make out a violation of a constitutional right," and (2) if so, "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 815-16. Officials are immune unless "the law clearly proscribed the actions" they took. *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985).

The Court has found no constitutional violation. But assuming a violation of Plaintiff's constitutional rights, Hedgpeth and Dr. Lopez would be entitled to qualified immunity. As the warden, Hedgpeth learned of Plaintiff's allegations of delay in medical treatment, looked into the situation, and discovered a neurosurgeon was awaiting test results to schedule a surgery. Surgery was conducted within approximately one month. The law does not "clearly proscribe[]" Hedgpeth's conduct. In fact, Hedgpeth's conduct was reasonable and prudent on this record.

Similarly, Dr. Lopez reviewed the inmate appeal and found Plaintiff was already being treated by a neurosurgeon. As such, Dr. Lopez granted the appeal to the extent it sought treatment, but denied the appeal to the extent it requested "to receive medication

---

[8] Doc. 83, at 9 (Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment).

[9] Defendants do not move for summary judgment for Dr. Spaeth based on qualified immunity.

- 11 -

1  without difficulties" because pain medication required examination by a physician before it
2  could be prescribed.  Again, Dr. Lopez's actions were not "clearly proscribed," and her
3  conduct was reasonable and prudent on this record.
4      Therefore, in the alternative, Hedgpeth and Dr. Lopez are entitled to qualified
5  immunity.

## C. Requests for Judicial Notice

Plaintiff requests the Court take judicial notice of a number of documents related to his state court proceedings. (Doc. 99). The party requesting judicial notice bears the burden of persuading the court judicial notice is proper. *In re Tyrone F. Conner Corp., Inc*., 140 B.R. 771, 781 (Bkrtcy. E.D. Cal. 1992); *see also United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 970 (E.D. Cal. 2004) (conclusions of law, conclusory allegations, unreasonable inferences, or unwarranted deductions of fact need not be accepted).  Even when the Court takes judicial notice of documents, it "does not adopt their factual findings or holdings; it simply acknowledges their existence and contents." *California ex rel. Lockyer v. Mirant Corp.*, 266 F. Supp. 2d 1046, 1053 (N.D. Cal. 2003). The Court will take judicial notice of the documents because they potentially go to the issue of notice to Hedgpeth.  However, Plaintiff has not made any showing that these documents are relevant to any other issues in this case.  As such, they are of minimal help to Plaintiff.

Plaintiff also requests the Court take judicial notice of the Second Amended Complaint,[10] exhibits in the pleadings, a decision in *In re Estevez*, 83 Cal Rptr. 3d 479 (Cal. Ct. App. 5th Dist. 2008), and Plaintiff's declaration. As to the Second Amended Complaint, exhibits and declaration, judicial notice is not necessary because these are pleadings in this case and exhibits to pending motions. The Court has considered these pleadings and exhibits as appropriate under the Federal Rules of Evidence. As to the reported state court decision, the decision addressed whether Plaintiff's state court writ was moot, state court jurisdiction,

---

[10] Defendants also request the Court take judicial notice of the Second Amended Complaint. (Doc. "79-10").

- 12 -

and proper parties in that case. None of these issues are relevant to the case before this Court. As such, the Court will not take judicial notice of the reported state court decision.

**D.     Director of Corrections**

The Director of Corrections is named as a defendant in the Second Amended Complaint ("SAC") as "J. Doe, Director of Corrections." (Doc. 31). On January 15, 2010, the summons as to the Director of Corrections was returned unexecuted. (Doc. 45). Defense counsel will be ordered to file a notice to inform the Court whether it represents the Director of Corrections or, if not, provide contact information for the Director of Corrections so the Director of Corrections may be served by the United States Marshal. If such contact information is sensitive, the notice may be filed under seal and ex parte. Defense counsel shall indicate whether it will accept service on behalf of the Director of Corrections.

Accordingly,

**IT IS ORDERED** Defendants' motion **(Doc. 79)** is **GRANTED**.

**IT IS ORDERED** the parties' requests for judicial notice **(Docs. "79-10", 86 and 99)** are **GRANTED IN PART AND DENIED IN PART.**

**IT IS ORDERED** no later than **February 3, 2012**, defense counsel shall file a notice in compliance with this order.

DATED this 20th day of January, 2012.

_____
Roslyn O. Silver
Chief United States District Judge